FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 1 4 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Lance Albert Dickison II
3620 W. Diana Avenue
Phoenix AZ 85051
(928) 460-9413

# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lance Albert Dickison II,<br><br>　　　　Plaintiff,<br><br>v.<br><br>State of Arizona;<br>Yavapai County Sheriff's Office;<br>Yavapai County Sheriff David Rhodes;<br>Lt. Daphne Smith;<br>Sgt. Fanning;<br>Sgt. Bailey;<br>Sgt. Fraser;<br>Officer Tiger;<br>Officer Bennett;<br>Officer Gibbs;<br>Officer Harrison;<br>Officer Olivas;<br>Officer Ambros;<br>Officer Hicks;<br>Officer Geist;<br>Officer Chariva;<br>Officer Mascarenas;<br>Officer Maldonado;<br>Officer Bahm;<br>Officer Macreynalds,<br><br>　　　　Defendant(s). | CASE NUMBER: CV25-08214-PCT-MTL--ESW<br><br><br>**COMPLAINT** |

### Jurisdiction

This court has jurisdiction over this matter pursuant to 1. This is a civil rights action under 42 U.S.C. § 1983, arising from violations of Plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments. 2. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343. 3. Venue is proper in the District of Arizona under 28 U.S.C. § 1391 because all events occurred in Yavapai County, Arizona. §§ 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1342, 28 U.S.C. § 1391 because all events occurred in Yavapai County, Arizona. . The plaintiff is a resident of Phoenix, Maricopa County, AZ and a citizen of the United States. The defendant, State of Arizona, is a resident of Phoenix, AZ and a citizen of the

United States. The defendant, Yavapai County Sheriff's Office, is a resident of Prescott, AZ and a citizen of the United States. The defendant, Yavapai County Sheriff David Rhodes, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Lt. Daphne Smith, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Sgt. Fanning, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Sgt. Bailey, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Sgt. Fraser, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Tiger, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Bennett, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Gibbs, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Harrison, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Olivas, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Ambros, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Hicks, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Geist, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Chariva, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Mascarenas, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Maldonado, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Bahm, is a resident of Camp Verde, AZ and a citizen of the United States. The defendant, Officer Macreynalds, is a resident of Camp Verde, AZ and a citizen of the United States. The cause of action arose in the Prescott division.

**Complaint**

1. On April 21, 2025, Plaintiff was sanctioned for communicating with Samantha, the mother of his children. 2. On May 8, 2025, Plaintiff was placed in administrative segregation without any hearing or due process. By Lt. Smith and Sgt. Fanning, Sgt. Bailey, Sgt. Fraser and unknown officers 8. On May 11, 2025, YCSO charged Plaintiff with "unauthorized communication with a prisoner." By Officer "Tiger". Samantha was not in custody at the time. A judge ruled that Plaintiff was authorized to communicate with Samantha. Officers Bennett and Gibbs witnessed this ruling. 9. On May 14, 2025, Lt. Daphne Smith stated, "We do not have to do what the judge says due to separation of powers." Plaintiff was then placed in the psychiatric dorm as punishment, despite having no history of mental health issues. Jail staff claimed this was necessary only to prevent Plaintiff from using a tablet. Officer Harrison, Olivas, Maldonado, Mascarenas, MacReynalds, and all listed Sgts and Lts were involved. 10. From May 18, 2025 at 6:00 p.m. until June 23, 2025 at 12:15 p.m., Plaintiff was held in lockdown. Plaintiff was repeatedly denied required out-of-cell time, including on May 21 and May 23. Officers Harrison, Geist, and Mascarenas admitted paperwork errors caused this deprivation but refused to remedy it. 11. On multiple occasions, Plaintiff was shuffled back and forth between Administrative Segregation and the Psychiatric Unit without medical

justification. 12. When first placed in the psychiatric dorm, the cell was covered in feces. Plaintiff was denied cleaning supplies and forced to remain until out time. 13. From May 14, 2025, until the present, Plaintiff has suffered severe emotional distress as a result of being placed in the psychiatric dorm as punishment. Plaintiff cried daily while housed there and continues to experience trauma and breakdowns when recalling his time in the psychiatric unit. 14. On May 28, 2025, Officer Mascarenas admitted that staff "treat certain people certain ways" and confirmed some inmates were given special privileges while Plaintiff was targeted for punishment. 15. Plaintiff requested copies of grievances submitted January 11, 2025, which demonstrated Lt. Smith had previously authorized contact with Samantha but later revoked it arbitrarily. 16. On May 30, 2025, an inmate in distress was mocked and returned from a padded cell without care. 17. On June 2, 2025, Officer Geist told inmate Charlie, who was on suicide watch, to "kill himself." 18. That same day, Plaintiff was finally transferred out of the psychiatric dorm, but only to Cell S-15 in max custody, directly adjacent to the psych unit, so he could "still hear the screaming," per Officer Harrison. 19. On June 8, 2025, after Samantha was reincarcerated, she was punished for Plaintiff having called her when she was not in custody. 20. Every disciplinary form given to Plaintiff stated that "inmates are not allowed to appeal pursuant to Sandin v. Conner." This misrepresented the law and was used to deny Plaintiff any review of his sanctions.

## Demand

Count I – Fourteenth Amendment: Denial of Due Process  21. Defendants placed Plaintiff in administrative segregation and psychiatric housing without a hearing, notice, or opportunity to respond, in violation of Wolff v. McDonnell, 418 U.S. 539 (1974). Count II – Fourteenth Amendment: Punitive Conditions of Confinement  22. Placement in psychiatric housing as punishment, in filthy and traumatizing conditions, violated due process rights of a pretrial detainee under Bell v. Wolfish, 441 U.S. 520 (1979), and Demery v. Arpaio, 378 F.3d 1020 (9th Cir. 2004). Count III – Eighth & Fourteenth Amendments: Deliberate Indifference to Health and Safety  23. Defendants acted with deliberate indifference by forcing Plaintiff into unsanitary psychiatric housing without medical need, denying out-of-cell time, mocking suicidal inmates, and exposing Plaintiff to psychological harm. Count IV – First Amendment: Retaliation  24. Defendants punished Plaintiff for exercising his right to communicate with Samantha, even after a judge authorized such communication, constituting retaliation in violation of the First Amendment. Count V – Fourteenth Amendment: Misuse of Sandin v. Conner to Deny Appeals  25. Defendants misapplied Sandin v. Conner, 515 U.S. 472 (1995), to claim Plaintiff had no right to appeal. 26. Plaintiff's placement in psychiatric housing and extended segregation constituted an atypical and significant hardship, the exact type of situation where due process protections apply under Sandin. 27. By denying all appeals based on a false interpretation of Sandin, Defendants deprived Plaintiff of liberty without due process. V. INJURIES  28. Plaintiff suffered and continues to suffer severe emotional distress, trauma, humiliation, and ongoing psychological harm as a result of Defendants' actions. VI. RELIEF REQUESTED  Plaintiff respectfully

requests that this Court: a. Enter judgment in favor of Plaintiff and against Defendants; b. Award compensatory damages in an amount to be determined at trial; c. Award punitive damages to deter similar conduct; d. Award costs and fees as allowed by law; and e. Grant such other relief as the Court deems just and proper. **Damages: $100,000,000** Plaintiff seeks compensatory and punitive damages in the amount of one hundred million dollars ($100,000,000). This sum is warranted because the violations he suffered were not minor or technical but represented a sustained and deliberate disregard for his constitutional rights. Plaintiff was placed in administrative segregation beginning on May 8, 2025, without notice, hearing, or due process of any kind, and was told that he had no right to appeal pursuant to Sandin v. Conner. He was wrongfully confined to a psychiatric unit despite never having a mental health diagnosis, solely as a means to restrict him from using a tablet, which branded him with a false stigma and subjected him to harsher conditions of confinement. The unlawful segregation and psychiatric placement caused Plaintiff to suffer extreme and ongoing emotional distress, humiliation, loss of dignity, disruption of his family life, and the psychological trauma of being punished for attempting to communicate with the mother of his children. These harms did not end upon release but continue to this day, manifesting in lasting mental anguish and reputational damage. The requested sum further reflects the extraordinary gravity of the misconduct by jail officials who acted with reckless indifference and deliberate disregard of established constitutional protections. By imposing punishment without process, concealing the right of review, and manipulating psychiatric housing for non-medical purposes, Defendants engaged in conduct that shocks the conscience and undermines public trust in the justice system. The amount sought is also justified as a deterrent, to ensure that no other individual endures the same deprivations of liberty, family integrity, and human dignity without redress. The scale of injury, the malicious or callous state of mind of the Defendants, the continuing nature of the harm, and the profound emotional, social, and familial consequences together justify the award of one hundred million dollars in damages. The Plaintiff wants a trial by jury.

Date: 10/14/2025

Signature of Pro Se Plaintiff
Lance Albert Dickison II
3620 W. Diana Avenue
Phoenix, AZ 85051
(928) 460-9413